IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: BLACK ANGUS HOLDINGS, LLC, ) | |
| ) | Bankr. Case No. 09-21349-11 |
| Debtor. ) | Chapter 11 |
| _____) | |
| ) | |
| BLACK ANGUS HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | Bankr. Adv. No. 09-6122 |
| ) | |
| v. ) | Dist. Case No. 10-2180-JWL |
| ) | |
| BACK YARD BURGERS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

## MEMORANDUM AND ORDER

In this adversary bankruptcy proceeding, plaintiff debtor, who owned a restaurant as a franchisee of defendant (who is a creditor of the estate), alleges that defendant breached a territorial provision of the parties' franchise agreement. The bankruptcy court denied defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and this Court granted defendant leave to appeal that decision on an interlocutory basis. Upon consideration of the parties' appeal briefs, the Court agrees with defendant that plaintiff's complaint fails to state a claim upon which relief can be granted, and it therefore reverses the decision of the bankruptcy court and orders that plaintiff's

adversary proceeding against defendant be dismissed.[1]

The parties' franchise agreement contained the following territorial provision:

> **Territory.** Franchisor [defendant] agrees that, during the term of this Agreement, it will not sell or establish any other franchised or company-owned Restaurant or any other restaurant which sells hamburgers and/or chicken sandwiches in the following territory: <u>A site located at 124 North Clairborne, Olathe, Kansas 66062 [the location of plaintiff's restaurant] with a one (1) mile exclusive radius</u> (the "Territory"), except in or in conjunction with any military installation, zoo, amusement park, or stadium/arena/coliseum.

(Emphases in original.) In its complaint, plaintiff alleges that this contractual one-mile radius has been extended to two miles by defendant; that defendant granted a franchise for a restaurant 2.17 miles from plaintiff's restaurant, with "a protected territory that extends in a one mile radius;" that plaintiff lost sales as a result of the opening of the new restaurant; and that defendant breached the territorial provision of the franchise agreement by granting the new franchise in a site that created an overlap between the two franchisees' protected territories.

Defendant moved to dismiss, arguing that because the new restaurant was alleged to be 2.17 miles from plaintiff's restaurant, it did not breach the plain and unambiguous language of the territorial provision. The bankruptcy court denied the motion, ruling that the inclusion of the word "exclusive" before "radius" made the provision sufficiently

---

[1]Neither party has requested oral argument, and the Court has determined, after examination of the briefs and the record of this appeal, that the facts and legal arguments have been adequately presented therein, and that oral argument will not significantly aid the dispositional process and is therefore not needed. *See* Fed. R. Bankr. P. 8012.

ambiguous to allow for an interpretation that would prohibit overlapping exclusive territories. Defendant now appeals the bankruptcy court's ruling to this Court.

This Court conducts a *de novo* review of the bankruptcy court's denial of defendant's motion to dismiss. *See Travelers Ins. Co. v. American AgCredit Corp. (In re Blehm Land & Cattle Co.)*, 859 F.2d 137, 139 (10th Cir. 1988) (on appeal, district court reviews bankruptcy court's conclusions of law *de novo*). The Court dismisses a cause of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see Twombly*, 550 U.S. at 555, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

The parties' franchise agreement (attached to the complaint) provided that it was to be interpreted under Tennessee law. Under Tennessee law, the interpretation of written agreements is a question of law. *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008). The Tennessee Supreme Court has set forth its state's law regarding the interpretation of written contracts as follows:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. In such a case, the contract is interpreted according to its plain terms as written, and the

3

> language used is taken in its plain, ordinary, and popular sense. The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. . . . In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.
>
> However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may be fairly understood in more ways than one. The court will not use a strained construction of the language to find an ambiguity where none exists.

*Id.* at 703-04 (quotations and citations omitted).

In its motion to dismiss and in this appeal, defendant has argued that, by its plain and unambiguous terms, the franchise agreement only prohibited it from establishing a restaurant physically located within a circle with a two-mile radius situated with plaintiff's restaurant at the circle's center.[2] Thus, defendant argues that because plaintiff alleged that the new restaurant was located 2.17 miles from plaintiff's restaurant, defendant did not breach the territorial provision, and plaintiff did not state a claim for breach of contract. Under plaintiff's theory, as alleged in its complaint and as argued in response to the motion to dismiss and on appeal, defendant breached the territorial

---

[2] In alleging that defendant changed the contractual one-mile radius to a two-mile radius, plaintiff does not allege that the parties altered the language of the territorial provision in any way, other than with respect to the number "one (1)".

4

provision of the franchise agreement because, in its location 2.17 miles from plaintiff's restaurant, the new restaurant's own one-mile-radius "protected territory" overlapped with plaintiff's two-mile-radius "protected territory."

Plaintiff argues that because the parties have embraced different interpretations of the territorial provision, a question of fact arises and any decision on the correct interpretation should await the presentation of evidence. As set forth above, however, under the governing Tennessee law, the Court first must look to the entirety of the agreement itself, and outside evidence may only be considered if the Court determines that the language of the agreement is ambiguous. *See GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610 (Tenn. Ct. App. 1990) (parol evidence may not be considered when terms of contract are clear and unambiguous); *NSA DBA Benefit Plan, Inc. v. Connecticut General Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997) (question of the existence of an ambiguity presents a question of law). An ambiguity does not arise simply because the parties' interpretations differ. *See Maggart*, 259 S.W.3d at 704.[3]

The territorial provision here provided that defendant could not sell or establish a restaurant "in the following territory: A site located at [plaintiff's address] with a [two]

---

[3]Plaintiff also argues that this claim "represents one of the last remaining assets that [plaintiff] has available to use for the reorganization," and that "[u]pholding the Bankruptcy Court decision is the only way to prevent the complete collapse of [plaintiff's] Chapter 11 Bankruptcy." Of course, such considerations are irrelevant, as the Court must decide this issue solely on the legal merits.

5

<u>mile exclusive radius</u> (the 'Territory')." Thus, under the ordinary meaning of this prohibition of a restaurant "in" the territory defined by a two-mile radius around plaintiff's restaurant, a new restaurant could not physically be situated or located two miles or less from plaintiff's restaurant. By that interpretation, a new restaurant more than two miles from plaintiff's restaurant was *not* prohibited, regardless of any other circumstance (for instance, the operation of a territorial provision benefitting the new restaurant).

Plaintiff has not explained how the language of the territorial provision is ambiguous. Plaintiff relies on the presence of the word "exclusive" modifying the word "radius" in the provision, and it argues that a breach occurred here because the "exclusive radius" for its restaurant and that of the new restaurant overlap. Plaintiff does not explain, however, how the word "exclusive" would alter the commonly-understood meaning of a prohibition of a new restaurant "in" the two-mile radius around its own location; or how the provision as a whole, which makes no reference to overlapping or the new restaurant's own territory, could fairly be understood to prohibit some locations outside the two-mile-radius circle.

Plaintiff does make reference to the bankruptcy court's opinion. The bankruptcy court reasoned as follows:

> [Defendant's] proposed reading of the Territory Provision is the most obvious one, construing it as if it simply said, "[Defendant] won't establish any other [franchise] restaurant in the specified territory." But this narrow view of the Provision seems to give little weight to the adjective "exclusive" modifying the word "radius." The phrase "exclusive

6

> radius" suggests a broader reading might have been intended, one barring [defendant] from establishing another restaurant with a territory radius overlapping [plaintiff's] territory, thereby competing with [plaintiff] in the specified territory by selling hamburgers or chicken sandwiches to customers located with [plaintiff's] "exclusive radius," rather than merely barring any restaurant physically located in that territory. [Defendant's] construction would have been satisfied by describing [plaintiff's] territory as "a site . . . with a one (1) mile radius," while [plaintiff's] proposed construction helps explain the addition of the "exclusive" to that phrase.

The Court does not agree, however, that the word "exclusive" made the territorial provision ambiguous. The ordinary meaning of "exclusive" is "excluding or having power to exclude (as by preventing entrance or debarring from possession, participation or use)." *See* Webster's Third New International Dictionary at 793 (1993). The ordinary meaning of "exclude" is "to shut out: restrain or hinder the entrance of," or "to bar from participation, enjoyment, consideration, or inclusion." *See id.* Thus, the presence of the word "exclusive", as it described the effect of the territorial provision, meant that other restaurants were physically excluded from the defined territory, and the territory around plaintiff's location was therefore exclusive to plaintiff with respect to the establishment of a restaurant.

There was no other language in the territorial provision that could have given rise to a reasonable alternative interpretation of the word "exclusive." There was no reference to the other restaurant's own territory (assuming it had a protected territory) or to the idea of overlapping territories. Nor was there any reference to competition for customers or the customers' proximity to any restaurant. The territorial provision plainly spoke in terms of prohibiting new *restaurants* "in" the defined territory, and not in terms

7

of prohibiting the encroachment of other restaurants' *territories* into plaintiff's defined territory. Indeed, under plaintiff's interpretation, the territorial provision would have granted it the exclusive right to exclusivity within the two-mile radius, as other restaurants would be excluded from having their own exclusive territories extend into plaintiff's exclusive territory. A plain reading of the provision recognizes only plaintiff's exclusive right to be located in the territory; it does not permit an interpretation that would have given plaintiff an exclusive right to exclusivity in the territory.

Moreover, plaintiff's interpretation assumes that the new restaurant will have its own protected, "exclusive" radius. The territorial provision did not apply only to franchised restaurants, however; it also expressly applied to company-owned restaurants established by defendant. Obviously, in the event of a company-owned restaurant, there would be no territorial provision, as there would be no franchise agreement and no reason for defendant to restrict itself from establishing other restaurants wherever it saw fit. Accordingly, plaintiff's argument that the territorial provision should be applied by reference to the new restaurant's protected territory is not consistent with the entirety of the provision.

In addition, the Court notes that the language of the territorial provision contrasted sharply with the language used by the parties later in the franchise agreement relating to non-competition by plaintiff. The non-competition provision stated as follows:

8

> Franchisee [plaintiff] agrees that it shall not . . . own, maintain, operate, engage in, or have any interest in any business which sells goods or services of a like competitive nature . . . and which is located within ten (10) miles of the protected territory of any company-owned or franchised Restaurant.

In that provision, the parties made their intent clear that the applicable area was to be measured from the "protected area" of a restaurant, and not from the physical location of the restaurant. Plaintiff argues that the territorial provision also required a measurement made by reference to restaurants' protected areas. The Court must read the franchise agreement as a whole, however, and the fact that the parties did not plainly refer in the territorial provision to distances from protected areas, as they did in the non-competition provision, indicates that they did not intend to apply the territorial provision in that way.

Finally, the Court notes that plaintiff's proposed interpretation does not comport with common sense, from the perspective of either of the parties. When plaintiff executed the franchise agreement, it could not have known what kind of protected radius that a future restaurant would have. For instance, under plaintiff's interpretation, a new restaurant with a five-mile protected radius could not be located within seven miles of plaintiff's restaurant, while a new restaurant with no protected area could be as close as two miles away; thus, plaintiff would not have known how close other restaurants could be to its own, and it therefore would not have known the extent of the benefit for which it had bargained. Similarly, defendant would have no reason to define exclusive territories by reference to customers located a certain distance from the respective

9

restaurants, as defining those territories by circles that cannot overlap would leave a great number of customers outside any circle and thus outside of the desired (protected) proximity of those customer to a restaurant.

The Court therefore concludes that the language of the territorial provision in the parties' franchise agreement is not uncertain and may not reasonably be interpreted to prohibit any overlap between plaintiff's circular territory and the protected territory (if any) of another restaurant. Thus, the provision is not ambiguous, and the Court applies the plain meaning of the provision, which prohibited only restaurants physically located two miles or less from plaintiff's restaurant. Under that interpretation, defendant did not breach the agreement by establishing a restaurant 2.17 miles from plaintiff's restaurant, as alleged in plaintiff's complaint. Plaintiff has not alleged any other breach by defendant. Accordingly, plaintiff has not stated a claim on which relief can be granted, and defendant is entitled to dismissal of plaintiff's complaint. The Court therefore reverses the order of the bankruptcy court, and it orders the dismissal of this adversary proceeding by plaintiff.

IT IS THEREFORE ORDERED BY THE COURT THAT the bankruptcy court's decision denying defendant's motion to dismiss is reversed, and the Court orders that this adversary proceeding by plaintiff against defendant be dismissed.

IT IS SO ORDERED.

Dated this 2nd day of September, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum<br>John W. Lungstrum<br>United States District Judge